IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

| | |
|---|---|
| ENERGY INVESTMENTS, INC., a Colorado corporation, and PINE PETROLEUM, INC., a North Dakota corporation,<br><br>Plaintiffs,<br><br>vs.<br><br>GREEHEY & COMPANY, LTD., a Texas limited partnership,<br><br>Defendant. | CV 14-13-GF-JTJ<br><br>**ORDER** |

**I. Synopsis**

This case arises out of a contractual dispute between the parties. Plaintiffs Energy Investments, Inc. and Pine Petroleum, Inc. (collectively "Energy Investments") argue Defendant Greehey & Company, Ltd. ("Greehey") owes them unpaid "prospect fees" for the oil and gas leases acquired pursuant to their written agreement. Energy Investments also argues it is entitled to overriding royalty interests carved out of the oil and gas leases acquired pursuant to the agreement. Energy Investments filed a motion for summary judgment, seeking a judgment against Greehey. Though the written terms of the agreement are unambiguous,

1

there are genuine issues of material fact regarding whether Greehey or its agents waived any defense regarding the leases Energy Investments purchased. There is no issue of fact that Greehey owes Energy Investments the prospect fees for the leases Greehey or its subsidiaries acquired. Therefore, Energy Investments's motion will be granted in part and denied in part.

## II. Jurisdiction

This case was filed in United States District Court for the District of Montana. Doc. 1. The Court has personal jurisdiction over the parties because they have conducted extensive business activity in Montana and are therefore "found" within the State of Montana. Fed. R. Civ. P. 4(k)(1)(A); Mont. R. Civ. P. 4(b)(1)(A).

The Court has subject matter jurisdiction because the citizenship of the parties is diverse: Energy Investments is a Colorado corporation, with its principal place of business in Denver, Colorado. Pine Petroleum, Inc. is a North Dakota corporation, with its principal place of business in Bismarck, North Dakota. Greehey & Company, Ltd. is a Texas limited partnership, with its principal place of business in San Antonio, Texas. (Doc. 1.) The amount in controversy satisfies the jurisdictional requirement. 28 U.S.C. § 1332; (Doc. 1).

The parties have consented to the jurisdiction of a United States Magistrate

Judge. (Doc. 26.)

### III. Status

Energy Investments moved for summary judgment, arguing the written agreement between the parties is unambiguous and any lease terms alleged to be outside of the written agreement are also enforceable. (Docs. 58, 58-1.) The parties fully briefed the motions. (Docs. 58-1, 60, 62.) The parties appeared for oral argument before the undersigned on August 24, 2015.

### IV. Standards

**Summary judgment**

The Court shall grant summary judgment if the movant shows there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The party moving for summary judgment has the initial burden of showing there is no genuine issue of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). The substantive law determines which facts are material; only disputes over facts that might affect the outcome of the suit under the governing law properly preclude the entry of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Nat'l Ass'n of Optometrists & Opticians v. Harris*, 682 F.3d 1144, 1147 (9th Cir. 2012).

If the moving party makes a prima facie showing that summary judgment is

appropriate, the burden shifts to the opposing party to show the existence of a genuine issue of material fact. *Id.* On summary judgment, all inferences should be drawn in the light most favorable to the party opposing summary judgment. *Id*. at 159.

### Contract Interpretation

As a general rule, the construction and interpretation of contracts is a question of law for a court to decide. *Leys v. Employers Ins. Co. of Wausau*, 2011 WL 1239726, *2 (D. Mont. 2011). It is also a question of law whether an ambiguity exists in a contract. *Klawitter v. Dettmann*, 886 P.2d 416, 420 (Mont. 1994) (citing *Audit Serv., Inc. v. Systad*, 826 P.2d 549, 551 (Mont. 1992)). Where the contract's language is clear and unambiguous, the Court's duty is to apply the language as written to the facts of the case. *King Resources, Inc. v. Oliver*, 59 P.3d 1172, 1177 (Mont. 2002). When an agreement is unambiguous, the case may be disposed of by summary judgment. *See, e.g., Klawitter*, 886 P.2d at 420-21.

### Waiver

Waiver is a voluntary and intentional relinquishment of a known right, claim, or privilege, which may be proved by express declarations or by a course of acts and conduct that induces the belief that the intent and purpose was waiver. *VanDyke Const. Co. v. Stillwater Mining Co.*, 78 P.3d 844, 847 (Mont. 2003). To

establish a knowing waiver, the party asserting waiver must demonstrate that the other party: (1) knew of the existing right; (2) acted in a manner inconsistent with that right; and (3) prejudice resulted to the party asserting waiver. *Id*.

"[I]t is for the trier of fact to determine whether an act is voluntary and the actor's intent." *Masters Group Intern., Inc. v. Comerica* Bank, 352 P.3d 1101, 1120 (Mont. 2015) (citing *Mining Properties, Inc. v. ASARCO, Inc.*, 893 P.2d 325, 329 (Mont. 1995)).

## V. Facts

On March 22, 2012, the parties executed an "Area of Mutual Interest ("AMI") Agreement" ("the AMI Agreement"). (Doc. 59-1.) The AMI Agreement provided that if Greehey or its subsidiaries acquired oil and gas leases within the AMI during the term of the AMI Agreement (March 22, 2012–March 22, 2013), Greehey would pay Energy Investments $50.00 per net mineral acre. If Energy Investments acquired oil and gas leases within the AMI during the term of the AMI Agreement, Greehey would pay Energy Investments $75.00 per net mineral acre. (Doc. 59-1.)

Pursuant to the AMI Agreement, Energy Investments had to assign any oil and gas lease it acquired within the AMI to Greehey and Greehey had to assign the overriding royalty interests of every lease acquired to Energy Investments. (Doc.

5

59-1.)

Greehey ultimately planned to assign and sell the leases to Apache Corporation. Apache would only acquire leases if they included specific terms, namely five-year lease terms with the option to renew. (Doc. 58-1 at 6; Doc. 60 at 8.) Apache never accepted assignment of many of the leases and never paid Greehey. Therefore, Greehey did not pay Energy Investments for certain leases. (Doc. 58-1 at 8; Doc. 60 at 15-16.)

## VI. Analysis

**1. The contract is unambiguous.**

Greehey argues the AMI Agreement fails to specify which acres are prospect acres, making the contract ambiguous. Greehey contends it owed a prospect fee only for acres acquired for a bonus payment of $200.00 or less, with lease terms providing for a five-year primary term and a two-year option to renew. Greehey argues its position "is based both on the parties' discussions . . . and upon the plain language of the AMI Agreement." (Doc. 60 at 20.)

The issue is whether the contract is ambiguous. Greehey argues its "interpretation is the only one that makes any sense in light of the context in which the AMI Agreement was created." (Doc. 60 at 21.) However, the fact that Greehey may have explained its deal with Apache to Energy Investments before

6

the parties signed the AMI Agreement does not change the plain language of the AMI Agreement. (Doc. 59-1); *see Mary J. Baker Revocable Trust v. Cenex Harvest Sts., Coops., Inc.*, 164 P.3d 851, 857 (Mont. 2007) ("A contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting, so far as the same is ascertainable and lawful.") (citing Mont. Code Ann. § 28-3-301). Furthermore, "when a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone if possible." Mont. Code Ann. § 28-3-303

Here, the plain language of the AMI Agreement belies Greehey's argument that it is ambiguous. The AMI Agreement clearly sets forth when and under what circumstances Greehey would owe Energy Investments prospect fees. The AMI Agreement is therefore unambiguous, and the Court grants summary judgment to Energy Investments on this issue.

2. **Prospect Fees**

Under Section 1.8 of the AMI Agreement, Greehey would pay Energy Investments a "Prospect Fee" for each mineral acre acquired during its term. The amount of the prospect fee was contingent upon who purchased the interest. "[A] fee of $75.00 per net mineral acre" was payable to Energy Investments "for all Oil and Gas Interest acquired by [Energy Investments] during the term of this

7

Agreement," and "[A] fee of $50.00 per net mineral acre" was payable to Energy Investments "for all Oil and Gas Interest acquired by GREEHEY or GREEHEY subsidiary (such as Shale Exploration)."

Section 2.2 of the AMI provides:

> GREEHY agrees to take assignment and pay for any lease *purchased by [Energy Investments]* within the AMI during the term of this agreement, subject to the provision in section 2.1 and on a similar lease format as attached Exhibit "B[.]"

(Emphasis added).

Section 2.1 of the AMI Agreement provides:

> [Energy Investments] will not buy any lease for more than $200 per acre without GREEHEY's written approval.

Greehey makes two arguments in reliance on Sections 2.2 and 2.1. First, it argues that it is not obligated to pay Energy Investments prospect fees for any lease it purchased for more than $200.00 because it did not give written authorization for such purchases pursuant to 2.1. Next, Greehey argues that it is not obligated to pay Energy Investments a prospect fee for any lease it purchased if the lease did not have a five-year/two-year term because the lease format attached as Exhibit B to the AMI Agreement required such a lease term.

Energy Investments counters that Greehey's agent provided written

authorization to purchase leases in excess of $200.00 per acre. Greehey concedes that its agent provided authorization to purchase leases for more than $200 per acre but contends he did so mistakenly. Energy Investments argues that the leases it purchased were on a similar lease format as Exhibit B to the AMI agreement and that the AMI Agreement only required leases to be in a similar format as Exhibit B, not to have identical terms as those set forth in Exhibit B. It argues that Greehey paid for leases not containing the five-year/two-year term. For these reasons, Energy Investments argues Greehey waived any argument it had under the AMI Agreement to not pay prospect fees for leases Energy Investments acquired.

In relation to the $75.00 Prospect Fees Energy Investments claims Greehey owes it for leases it purchased, summary judgment is not appropriate because whether Greehey's conduct, or that of its agent, amounts to waiver is a question of fact. However, the $50.00 Prospect Fees Energy Investments claims Greehey owes it are another matter altogether. Sections 2.1 and 2.2, by their clear and unambiguous terms, apply only to leases Energy Investments acquired. Therefore, these provisions have no bearing on leases Greehey or its subsidiaries acquired and the prospect fees Greegey owes to Energy Investments for these leases. The undisputed facts establish that Greehey and/or its subsidiaries acquired leases of oil and gas interests in the AMI during the term of the AMI Agreement. Pursuant to

9

Section 1.8's unambiguous terms, Greehey owes Energy Investments a $50.00 Prospect Fee for each net mineral acre Greehey or its subsidiary acquired during the term of the AMI Agreement in the AMI.

The facts are undisputed that the information and figures set forth on the "Master Lease Spreadsheet," attached to Energy Investments's brief in support of its motion for summary judgment, are true and correct. (Doc. 61 at 16-17.) Based upon the figures in the Master Lease Spreadsheet, Greehey and its subsidiaries acquired oil and gas leases totaling 59,970.307 net mineral acres in the AMI during the term of the AMI Agreement. Pursuant to the AMI Agreement's unambiguous terms and the undisputed facts from the Master Lease Spreadsheet, Greehey owes Energy Investments prospect fees in the amount of $2,998,515.35 for these leases (59,970.307 net mineral acres x $50.00 prospect fee per net mineral acre). The Court therefore grants summary judgment in Energy Investments's favor in the amount of $2,998,515.35 for the $50.00 prospect fees it claims from Greehey for leases Greehey and/or its subsidiaries acquired in the AMI during the term of the AMI Agreement .

## VII. Conclusion

Summary judgment is not appropriate as to all the leases because there are genuine issues of material fact as to waiver. Though the Agreement is not

ambiguous, it is not clear whether Greehey waived its defenses to its contractual obligations.

Therefore, **IT IS HEREBY ORDERED** that Plaintiff Energy Investments's Motion for Summary Judgment (Doc. 58) is **GRANTED IN PART** and **DENIED IN PART**.

Dated the 15th day of October, 2015.

_____
John Johnston
United States Magistrate Judge